Submitted November 26, 2014, affirmed June 2, petition for review denied
November 3, 2016 (360 Or 568)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## DOUGLAS WAYNE CHANDLER,
*Defendant-Appellant.*

Tillamook County Circuit Court
111222; A153171

377 P3d 605

Peter Gartlan, Chief Defender, and Morgen E. Daniels, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Peenesh H. Shah, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Garrett, Judge, and Edmonds, Senior Judge.

**ORTEGA, P. J.**

An investigation by the Oregon Department of Justice's Internet Crimes Against Children Task Force (ICAC) revealed that defendant was openly sharing photographs depicting child sexual abuse over the internet. Following a jury trial, defendant was convicted of five counts each of first- and second-degree encouraging child sexual abuse. On appeal, defendant asserts evidentiary errors in three assignments of error (assignments one, three, and four), all of which we reject for the reasons discussed in this opinion. The remaining two assignments, which we reject without written discussion, challenge the court's failure to declare a mistrial based on prosecutorial misconduct. Accordingly, we affirm.

In May 2011, McBeth, an agent with the ICAC, was able to download seven images from a computer in defendant's home, five of which depicted "underage children involved in acts of sexual conduct." McBeth determined that the Internet Protocol (IP) address used to share those images over a peer-to-peer network was registered to defendant. After obtaining defendant's name and address, McBeth secured a search warrant for his apartment. When McBeth served the warrant, she found defendant sitting in front of a computer, which was on and running at the time. Shortly thereafter, defendant told McBeth that "there were images on his computer that * * * he may not be able to confirm the age of the girls" and that "he would go so far as to say that there would be stuff on his computer."

ICAC agents then searched defendant's home and located two computers, which were linked together through the same network. Both computers contained photographs depicting child sexual abuse; however, the photographs that were the basis for the charged offenses in this case were located on the computer that defendant had been sitting in front of when the warrant was executed. We refer to that computer as the "Elite" model. The other computer found in the home belonged to defendant's wife; we refer to that computer as the "Special Edition" model.

Defendant was charged with five counts of first-degree encouraging child sexual abuse and five counts of

second-degree encouraging child sexual abuse. While await-
ing trial, defendant made several incriminating statements
to his wife over the phone, which were recorded by police. The
state introduced those statements at defendant's trial, along
with testimony from agents involved with the investigation.
Posler, the computer forensics examiner who preserved and
analyzed the evidence found on defendant's computer, testi-
fied that, in addition to the photographs that provided the
basis for the charges against defendant, the Elite computer
also contained adult pornography and cartoon drawings of
child sexual abuse. The jury also heard testimony, elicited
by both the state and defendant, about who had access to the
computers found in the home. Defendant's defense theory
was that there had been other members of his household,
namely his wife and two young children, who had access to
the Elite computer and could not be excluded as suspects.
Neither defendant nor his wife testified at trial. The jury
returned a guilty verdict on all counts.

As noted, defendant asserts three claims of eviden-
tiary error on appeal. We address each of them in turn.

We begin with defendant's first assignment of error,
in which he contends that the trial court erred by admit-
ting some of his wife's out-of-court statements. In particu-
lar, defendant challenges the following statements to which
McBeth testified at trial:

> "[Defendant's wife] said that there were two computers
> in the house. She said that one was [defendant's] and that
> was the one in the corner near the sliding glass door, the
> one that we saw him sitting at. She had identified it as his
> computer. She said that she has used the computer in the
> past, but she currently does not have access to the com-
> puter because [defendant] changed the password but he did
> not tell her what it was."

Defendant argues that those statements were hearsay and
should not have been admitted over his objection. He con-
tends that the statements did not fall under any hearsay
exception and that their admission was not harmless to his
case. Specifically, defendant claims that the statements were
the only evidence introduced at trial showing that defendant
had exclusive control of the Elite computer where the photo-
graphs were found. Citing Article VII (Amended), section 3,

of the Oregon Constitution, defendant claims that the erroneous admission of the hearsay statements likely affected his substantial rights and requires correction.

The state impliedly concedes that the statements were hearsay; however, it argues that the statements were properly admitted under the doctrine of curative admissibility.[1] The state asserts that the statements were properly admitted under that doctrine to allow the state to explain similar inadmissible hearsay statements introduced *by defendant* earlier at trial. Alternatively, it argues that, even if the statements were inadmissible under that doctrine, their admission was harmless because the evidence did not have significant probative value.

We agree that the statements in question were hearsay.[2] However, we need not reach the question of whether the statements were admissible under the doctrine of curative admissibility, because we conclude that any error in admitting the statements was harmless. *See* OEC 103(1) ("Evidential error is not presumed to be prejudicial."). Thus, we limit our discussion to the harmless error inquiry, recounting additional facts as necessary. *State v. Maiden*, 222 Or App 9, 11, 191 P3d 803 (2008), *rev den*, 345 Or 618 (2009) ("[I]n our assessment of whether the erroneous admission of disputed evidence was harmless, we describe and review all pertinent portions of the record, not just those portions most favorable to the state.").

We must affirm defendant's conviction, "despite any error committed at trial, if, after considering all the matters

---

[1] The curative admissibility doctrine provides that, "'where one party offers inadmissible evidence, which is received, the opponent may then offer similar facts whose only claim to admission is that they negative or explain or counter balance the prior inadmissible evidence, presumably upon the same fact, subject matter or issue.'" *State v. Craine*, 271 Or App 101, 111, 349 P3d 628 (2015) (quoting *Wynn v. Sundquist*, 259 Or 125, 136, 485 P2d 1085 (1971)).

[2] Hearsay is "'a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted.'" *State v. Cook*, 340 Or 530, 536, 135 P3d 260 (2006) (quoting OEC 801(3)). Here, the statements were made by defendant's wife, who did not testify at trial, and were offered to prove that defendant had access to and control of the two computers. Such statements are not admissible "in the face of a timely objection to their admission, unless the statements fit within one of the exceptions provided by the Oregon Evidence Code or provided by another source of law." *Cook*, 340 Or at 536-37.

submitted, [we are] of the opinion that the judgment 'was such as should have been rendered in the case.'" *State v. Davis*, 336 Or 19, 28, 77 P3d 1111 (2003) (discussing the requirements of Article VII (Amended), section 3, of the Oregon Constitution). That is, we must determine, after reviewing the record, whether there is "little likelihood that the particular error affected the verdict." *Davis*, 336 Or at 32. In doing so, we consider "any differences between the quality of the erroneously admitted evidence and other evidence admitted on the same issue" to assess whether the jury would have found the evidence to be duplicative, cumulative, or unhelpful in its deliberations. *Maiden*, 222 Or App at 13 (discussing the factors set forth in *Davis*). Additionally, we consider "the importance of the erroneously admitted evidence to a party's theory of the case." *Id.* The degree to which the evidence relates to a central factual issue in the case can be indicative of the extent to which it may have affected the jury's determination. *See id.*

In this case, the challenged statements were relevant to a central issue in defendant's case—that is, defendant maintained that the state could not prove that *he* was the one who possessed and duplicated (by downloading and saving) the photographs on his computer. The hearsay statements undermined defendant's argument because they suggested that, by password-protecting the computer, defendant had control over the computer. However, for the following reasons, we conclude that there was little likelihood that admitting the statements affected the jury's verdict.

We first note that defendant elicited very similar hearsay statements from the same witness. Defendant's counsel engaged in the following colloquy with McBeth before the state elicited the challenged hearsay statements on redirect:

"[Defendant's Counsel]:   The [Elite] is the one you've identified as [defendant] using at the time of your entry into the residence; is that right?

"[McBeth]:   Yes.

"[Defendant's Counsel]:   And is that the computer you've since described in your testimony as [defendant's] computer?

"[McBeth]:   Yes.

"[Defendant's Counsel]:   Okay. How have you identified—Are you identifying that computer as [defendant's] computer based upon the fact that you saw him using it at the time of the execution of the search warrant?

"[McBeth]:   No. There were other factors to that.

"[Defendant's Counsel]:   Okay. Now, the *** Special Edition, who does that computer belong to?

"[McBeth]:   [Defendant's wife].

"[Defendant's Counsel]:   And how did you identify that [defendant's wife] is the user of that computer?

"[McBeth]:   [She] told me that."

To further establish who had access to the computer, defendant's counsel inquired as follows:

"[Defendant's Counsel]:   Okay. Can you tell me who had access to the [Elite] computer in [defendant's] residence?

"[McBeth]:   [Defendant].

"[Defendant's Counsel]:   Did [defendant's wife] have access to that computer?

"[McBeth]:   She had said that she had used that computer at one time, but my recollection of our conversation was that she wasn't currently using it.

"[Defendant's Counsel]:   She wasn't currently using it in July of 2011?

"[McBeth]:   Let me refresh my memory here. Sir, my recollection of my conversation with [defendant's wife], my independent recollection, is that she did say that she had used that computer in the past."

Comparing those hearsay statements, which were admitted, to the ones elicited by the state, we readily conclude that the statements equally supported the same inference: that defendant was the computer's primary user but that his wife, at one point, had also used the computer.

To be sure, the statements elicited by the state contained the additional assertion that the Elite computer was password-protected; however, there was other, nonhearsay

evidence presented at trial as to that specific fact. Posler, the forensic computer examiner, testified that defendant's computer was protected by a complex password and indicated that he found a notebook in which various complex passwords were written down, though none of them worked on the computer. Thus, even without the challenged hearsay statements, the jury heard evidence from which it could be inferred that defendant's computer was password-protected from someone else using it.

Moreover, the probative value of the password evidence is minimal in the context of this case. At trial, defendant did not appear to dispute that the Elite computer was his; rather, his defense focused on demonstrating that other people had or could have had access (and therefore, opportunity) to save the photographs onto his computer. During closing arguments, defendant referred to the "password thing" as a "red herring," claiming that "it's easy to access computers" and that "the police were able to do it without any special software, without knowing any passwords whatsoever." He pointed out "how easy it is to get on a computer because [the ICAC agents] did that exact thing the day they executed the search warrant." Posler's testimony at trial corroborated defendant's closing argument; he testified that, "if somebody who knows the password has logged [onto] the computer and left it turned on and logged in, sure, anybody who sat down could use it."

Ultimately, defendant asserts that the hearsay statements introduced by the state were the only evidence indicating that he was the one who saved the photographs onto his computer. That assertion is incorrect. In addition to the testimony previously mentioned during McBeth's direct examination, defendant's own incriminating statements corroborated the other evidence. In a conversation recorded in the jail while defendant was awaiting trial and later played for the jury, defendant told his wife:

> "I got complacent, I got sloppy, okay. I didn't do anything to hurt anybody. I was in some questionable shit on the Internet, okay. That's fine. I accept responsibility. That's my fault. If I walk away of this with anything less than a year, if I walk away without probation or any other thing,

I'm never going to do a damn thing on the goddamn computer again."

Given that the jury was able to consider that and similar statements in its deliberations, there is little likelihood that admitting the challenged hearsay statements affected the verdict in this case. Therefore, any error in admitting those statements was harmless.

We next turn to defendant's third and fourth assignments of error, which contend that the trial court erred by admitting evidence of prior bad acts. We begin by recounting additional procedural facts.

As noted, Posler testified at defendant's trial about what he found during his analysis of defendant's computer. Posler had replicated and analyzed that evidence, taking screenshots of the computer display to provide a representation of the files, bookmarks, web usage, search terms, and software as they appeared on the Elite computer. He saved those screenshots—a total of 138—onto discs, which were introduced at trial as Exhibits 6 and 7. The screenshots contained, in part, information corresponding to the photographs that were the basis for the charged offenses, as well as file names and images related to other content, including a large volume of adult pornography, cartoons depicting child sexual abuse, and written stories about sexual contact between adults and children. The jury was able to see the screenshots during Posler's testimony, as he described what they indicated about the activity and files he discovered on defendant's computer.

Defendant objected to the introduction of Exhibit 6 (the first disc) when it was first offered based on relevance and cumulative evidence grounds, arguing that the state had already admitted Exhibits 1 to 5, which were the photographs specific to the charged offenses. The state responded that *where* the images were located on the computer, as indicated by the screenshots, was distinct and relevant information because it showed knowledge and absence of mistake. Additionally, the state argued that

"there [were] numerous other items depicted in the screenshots which would tell the user exactly what they were

doing, where they were searching, efforts made to move images to specific folders, all showing consciousness of action and thought."

The trial court overruled defendant's objection and received Exhibit 6 into evidence.

Later, when Posler was testifying about some of the contents in the "saved files folder" of the peer-to-peer sharing program on defendant's computer, he stated:

"And we see down here gray X's which means that these files were not being shared, that other people could not get these files through the software. *And then we see numerous file names here that are indicative of child pornography.* Nine yo nude preteen girls, eleven yo girl rides the cock and loves it, things like this."

(Emphasis added.) At that point, defendant renewed to his objection stating:

"I do renew my objection to *this testimony*, Your Honor, and *this evidence.*

"Again, the basis for my argument is that the State is now trying to introduce *evidence of other types of child pornography which are not subject to this indictment.* This is, in essence, irrelevant evidence because it does not pertain to the five images which the State is now prosecuting.

"Because it's not relevant, it's also highly prejudicial because it tends to show a negative view of the defendant based upon evidence, which again, is not related to this indictment.

"*This evidence* is also *evidence* which is *character evidence of prior bad acts.* This is also evidence which could be indicative of action and conformity.

"And for all those reasons, Your Honor, this is highly prejudicial evidence. This evidence should not be admitted to the jury and, on that basis, I am also moving for a mistrial."

(Emphases added.)

The state responded that the evidence was "exceedingly relevant" because, combined with the other evidence, it was "all consistent with identifying [defendant] as being the person who took these steps to put these things into the

computer he uses." It argued that, to that end, the evidence was relevant "to show identity, lack of mistake, and intent."

The trial court overruled defendant's objection, explaining that the evidence was relevant because it addressed defendant's prior suggestion that the photographs were on his computer due to a mistake or because someone else had put them there. The court also noted that the evidence helped explain to the jury how Posler had conducted his analysis of the computer.

As to Exhibit 7 (the second disc), defendant did not initially object to its admission. However, after Posler began to testify about certain screenshots in that exhibit that referred to written stories of sexual contact between adult and children, defendant objected on hearsay and relevance grounds, stating that he objected to "the content of the written stories" and to "the relevance of the stories that are not related to the indictment."

On appeal, defendant argues that the "disputed evidence"[3] in Exhibits 6 and 7 was inadmissible because it was not relevant for a noncharacter purpose under OEC 404(3).[4] He argues that none of the state's theories of relevance (identity, intent, lack of mistake or accident, and knowledge) apply in this case. Defendant claims that the state's actual purpose for introducing the evidence—to show defendant's interest in sexual conduct involving children—was to demonstrate propensity, which OEC 404(3) forbids.

In response, the state first argues that defendant did not preserve his challenge to the bad acts evidence in Exhibits 6 and 7. That is so, the state contends, because defendant objected to the exhibits as whole, even though at least some portions of each exhibit were admissible. Second,

---

[3] By "disputed evidence," we understand defendant to mean the portions of Exhibits 6 and 7, as well as portions of Posler's testimony, corresponding to files and images involving sexual contact between adults and children that were not the subject of the indictment in this case.

[4] OEC 404(3) provides:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

the state argues that, even if defendant's argument was preserved, the court did not err in admitting the evidence because OEC 404(4),[5] rather than OEC 404(3), governs this case. The state asserts that the evidence contained in Exhibit 6, which indicated a large volume of illicit material on defendant's computer, was relevant because it tended to show that "defendant knew he possessed the pertinent pornography," which invited "the inference that defendant would have seen the pornography in the normal use of his computer, and the strength of that inference was directly proportional to the quantity of pornography contained in his computer." Moreover, the state argues that the evidence was also admissible under OEC 404(3) because it was relevant as proof of knowledge.

Generally, to preserve a claim for review, "a party must provide the trial court with an explanation of his or her objection that is specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted." *State v. Martinez*, 275 Or App 451, 459, 364 P3d 743 (2015), *rev den*, 358 Or 611 (2016) (internal quotation marks omitted). "Ultimately, the focus of our preservation inquiry is on whether a party has given opponents and the trial court enough information to be able to understand the contention and to fairly respond to it." *Id.* (internal citations omitted). However, we have explained that the preservation analysis is challenging in cases where the state offered a handful of exhibits containing multiple pieces of evidence and the defendant responded with categorical objections to the exhibits as a whole, rather than challenging specific pieces of evidence contained within the exhibits. *Id.* at 459. In such cases, the issue of preservation and the merits of the case can become "inextricably linked." *Id.* at 458.

---

[5] OEC 404(4) provides:

"In criminal actions, evidence of other crimes, wrongs or acts by the defendant is admissible if relevant except as otherwise required by:

"(a) [OEC 406 to 412] and, to the extent required by the United States Constitution or the Oregon Constitution, [OEC 403];

"(b) The rules of evidence relating to privilege and hearsay;

"(c) The Oregon Constitution; and

"(d) The United States Constitution."

As noted, the state argues that defendant did not preserve his arguments here because he did not make particularized objections to the evidence in Exhibits 6 and 7. We agree. With regard to Exhibit 6, the timing and context of defendant's objections reflect his intention to challenge the admission of illicit material contained in the slides that was unrelated to the five specific images charged in the indictment. Although defendant initially objected to the evidence on grounds of general relevance and cumulativeness, which was not sufficient to preserve an OEC 404(3) challenge, his renewed objection clarified that he objected to the evidence, in part, because it reflected prior bad acts. The crux of the state's response to defendant's objections was to establish other purposes for the evidence. To that degree, the state or the trial court would not likely be surprised by defendant's appellate arguments.

However, although defendant preserved the *basis* of his objections, some portions of Exhibit 6 were admissible. Yet defendant failed to identify the specific parts of Exhibit 6 that he asserted were inadmissible, which he also was required to do. As the Supreme Court has explained:

> "'It is well established that when evidence is offered as a whole and an objection is made to the evidence as a whole and is overruled, the trial court will ordinarily not be reversed on appeal if any portion of the offered evidence was properly admissible, despite the fact that other portions would not have been admissible had proper objections been made to such portions of the offered evidence.'"

*State v. Brown*, 310 Or 347, 359, 800 P2d 259 (1990) (quoting *Sproul v. Fossi*, 274 Or 749, 755, 548 P2d 970 (1976)); *see also Martinez*, 275 Or App at 460 (rule applies to exhibits in criminal cases).

Exhibit 6 contained at least some material that did not reference child sexual abuse, as defendant was aware. After the court overruled defendant's first objection to Exhibit 6 on relevance grounds, Posler testified at length about defendant's computer setup, including relevant information about the computer being password-protected. As he did so, he referenced corresponding screenshots in Exhibit 6. Defendant made no objection to any of that evidence, nor

does he challenge its admission on appeal. We understand defendant's appellate argument to be that, under OEC 404(3), the court should have excluded any and all explicit material contained in Exhibit 6 that was unrelated to the photos that served as the basis for the charges against him— but at trial, defendant objected to Exhibit 6 in its entirety, without reference to the specific prior bad acts evidence that he believed was inadmissible.

Moreover, defendant failed to identify, either below or on appeal, which of the 98 screenshots contained in Exhibit 6 he was contending contained objectionable prior bad acts evidence. Given that defendant initially objected to Exhibit 6 as a whole, we cannot conclude that the court understood his renewed objection to reference only a subset of the exhibit—and if so, what its contents were. Because defendant failed to afford the trial court a clear opportunity to address the admissibility of specific portions of Exhibit 6 that he found problematic, we are in no position to find that the trial court erred in admitting the exhibit in its entirety.

To the extent defendant means to suggest that we, on appellate review, must sort through Exhibit 6 to identify any and all bad acts evidence unrelated to the charged conduct, we decline to do so. *Cf. Brown v. J. C. Penney Co., Inc.*, 297 Or 695, 705, 688 P2d 811 (1984) ("One who objects to an exhibit on the ground that it is not to be received because it contains irrelevant material must object to those specific parts, and an objection to the entire exhibit, if it contains relevant matter, will avail nothing on appeal." (Internal quotation marks omitted.)); *State v. Carlson*, 311 Or 201, 219, 808 P2d 1002 (1991) ("An objection to evidence as a whole is insufficient as a basis for reversal on appeal when any part of the evidence objected to is admissible."). Accordingly, we conclude that defendant did not adequately preserve his claims regarding Exhibit 6 for review.

As to Exhibit 7, we also conclude that defendant's appellate argument is unpreserved. At trial, defendant made an objection to that exhibit based only on hearsay and relevance. Without more, we cannot conclude that defendant preserved his argument that that exhibit was inadmissible

because it contained evidence of prior bad acts, which is the sole basis of his challenge on appeal.

Affirmed.