Submitted on remand from the Oregon Supreme Court April 14, affirmed July 2, petition for review denied November 5, 2008 (345 Or 416)

# STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

# COLIN ALEXANDER SAUNDERS,
*Defendant-Appellant.*

Washington County Circuit Court
C010764CR, C013567CR;
A119606 (Control), A119607

188 P3d 449

Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Office of Public Defense Services, for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Douglas F. Zier, Assistant Attorney General, for respondent.

Before Schuman, Presiding Judge, and Ortega, Judge, and Rosenblum, Judge.

ROSENBLUM, J.

**ROSENBLUM, J.**

This case returns to us on remand from the Oregon Supreme Court for reconsideration in light of its opinion in *State v. Shaff*, 343 Or 639, 175 P3d 454 (2007) (*Shaff II*). *State v. Saunders*, 344 Or 277, 179 P3d 671 (2008) (*Saunders II*). In our original opinion, *State v. Saunders*, 211 Or App 73, 83, 153 P3d 144 (2007) (*Saunders I*), we held that the circumstances under which defendant made statements to police were compelling and that all of his statements to police should have been suppressed. Noting that we had relied on an opinion that was subsequently reversed, *State v. Shaff*, 209 Or App 68, 146 P3d 389 (2006) (*Shaff I*), the Supreme Court vacated *Saunders I* and remanded the case "to determine whether * * * the circumstances * * * ever became compelling and, if so, when that occurred." *Saunders II*, 344 Or at 279. In light of the Supreme Court's clarifications in *Shaff* about the nature of compelling circumstances, we conclude that the trial court correctly decided defendant's motion to suppress on the record before it. Accordingly, we affirm defendant's convictions on all counts.

██ The state bears the burden to prove by a preponderance of the evidence that a defendant's statements were voluntary. *State v. Stevens*, 311 Or 119, 137, 806 P2d 92 (1991). In *Saunders I*, we quoted at length from the officer's trial testimony recounting his interview of defendant in order to determine whether the admission of the evidence prejudiced defendant at trial. In determining whether the trial court erred in denying defendant's motion to suppress evidence of statements made during that interview, however, we limit our review to the record before the trial court at the time it decided the motion.[1] *See State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993) (appellate courts are bound by express findings of historical fact and must presume implicit factual findings consistent with the trial court's legal conclusion).

---

[1] The officer's trial testimony was considerably more detailed than his testimony at the hearing on defendant's motion to suppress, but defendant did not renew his objection to the admission of the evidence at trial. We therefore do not consider the officer's trial testimony in analyzing whether the trial court correctly concluded that the circumstances were not compelling.

That record reveals that Detectives Marley and Chapman, both armed but in plain clothes, went to defendant's house to investigate allegations that defendant had sexually abused his former girlfriend's child. Defendant invited them in and willingly took a seat at his kitchen table across from Marley while Chapman stood nearby taking notes. Marley testified that defendant attempted to stand during "the latter end" of the interview, whereupon both Marley and Chapman asked him, "Please sit down." He complied, explaining that he had stood to retrieve water and cigarettes, and Chapman retrieved the items for him.

According to Marley, shortly after defendant stood up, Chapman stepped out of the room to call for backup while Marley continued to question defendant. Chapman clarified that she called for backup shortly after Marley showed defendant a stick-figure drawing. The drawing was not entered into evidence or described at the suppression hearing, but defendant reacted so nervously to seeing the drawing that Chapman was "concern[ed] that he might flee." The interview lasted about one and one-half hours, at which point the officers decided to arrest defendant and transport him to the police station, where he received *Miranda* warnings. Defendant remained seated the entire time with the exception of standing in an effort to retrieve his water and cigarettes.

The transcript of the suppression hearing contains little evidence of the content of the exchange between defendant and the officers during the interview. It does reveal, however, that Marley told defendant that the victim had made credible allegations and that the victim appeared to lack a motive to lie. When Marley asked defendant whether the victim was lying, he responded that he did not know if she was lying. Defendant asked the officers whether they believed him, and both officers replied that they did not.

■   In *Saunders I*, we held that the totality of the circumstances of the officers' asking defendant to remain seated, "even—or especially—in his own home," as well as the officers' confronting defendant with incriminating evidence, would have compelled a reasonable person to answer the officers' questions. 211 Or App at 82-83. In so holding, we relied on *Shaff I*, in which we held that the fact that the defendant

asked the officer for permission to move about his own home—and the fact that the officer granted it—demonstrated the officer's control over the defendant's physical environment. Noting that "the fact that the interview occurs in familiar surroundings diminishes the police-dominated atmosphere that *Miranda* warnings were intended to counteract," the Supreme Court disagreed. *Shaff II*, 343 Or at 646. It further concluded that the officer standing in the defendant's doorway in that case did not "physically restrain[ ]" the defendant "in the ordinary sense of those words," and that a minimal level of restraint, without more, is insufficient to make the setting a compelling one. *Id.* at 647. We conclude that, in this case, the officers' request that defendant "[p]lease sit down" did not, by itself, make the circumstances compelling.

The question before us, then, is whether additional factors combined with Marley and Chapman's request to remain seated to create a compelling setting. In *Saunders I*, we concluded that the officers' confronting defendant with incriminating evidence, namely, the victim's credible allegations and the stick-figure drawing, contributed to making the circumstances compelling. In so holding, we relied on *Shaff I* for the proposition that "[d]irect confrontation with the evidence of criminal conduct * * * exerts pressure on a reasonable person to provide an explanation," particularly where the officer repeatedly asks the suspect for one. 209 Or App at 74. In reversing *Shaff I*, the Supreme Court clarified that "what matters is not whether evidence of guilt was apparent to the suspect; rather, it is whether the officers used that evidence in a coercive manner." *Shaff II*, 343 Or at 650.

In light of that clarification, we now conclude that confronting defendant with incriminating evidence did not make the circumstances compelling. There is no evidence in the record of the suppression hearing that Marley and Chapman used the victim's allegations or the drawing in a coercive manner.

In short, given the legal principles articulated in *Shaff II*, we conclude that the trial court did not err in determining that a preponderance of the evidence before it supported the conclusion that the circumstances were not compelling. It follows that the trial court properly denied defendant's motion to suppress.

■	Defendant contends in his second assignment of error that the trial court erred by denying his motion to exclude a doctor's testimony that she had diagnosed the victim as having been sexually abused. Defendant sought to exclude the evidence in advance of trial, whereupon the court ruled that it was admissible "if the doctor is prepared to testify and give a foundation for that opinion." At trial, defendant did not object to the doctor's testimony as lacking foundation. Accordingly, we decline to consider his argument on appeal that the testimony lacked the proper foundation, because he failed to preserve that issue below.

■	In his third and fourth assignments of error, defendant contends that the trial court erred by admitting evidence that, during the interview at his home, defendant asked whether Marley and Chapman believed that he was innocent and that each officer responded that he or she did not. We need not decide whether the trial court erred in admitting the disputed evidence because the error, if any, was harmless. Error is harmless if there is little likelihood that it affected the verdict. *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). Defendant's testimony is properly considered as part of our harmless error analysis. *See State v. McGinnis*, 335 Or 243, 254, 64 P3d 1123 (2003) ("Fully aware of the advantages and disadvantages of testifying, [the] defendant chose to take the stand and to meet the state's evidence. Under such circumstances, there is no reason to exclude the defendant's testimony from a review of the record for harmless error."). Defendant testified about the police interview in his home, including the question he asked the officers and their responses. We conclude that there is little likelihood that the admission of Marley's testimony, if error, affected the verdict, because it was cumulative of defendant's testimony.

■	Lastly, defendant contends that the trial court erred by failing to instruct the jury that at least 10 jurors must agree on a particular, distinct act of misconduct underlying each charge to convict defendant on that charge. Defendant acknowledges that he did not request such an instruction, but he argues that the trial court's failure to give it constitutes plain error. The verdict forms in this case alleged in each count that there was one victim who was identified by

name. Thus, the trial court did not commit plain error in failing to give a concurrence instruction. *See State v. Miller*, 213 Or App 237, 238, 159 P3d 1293 (2007); *State v. Rodriguez-Castillo*, 210 Or App 479, 500, 151 P3d 931, *rev allowed*, 347 Or 727 (2007). In addition, in drafting the verdict form, the trial court "[t]ried to distinguish which counts went with which allegation" and told defendant, "If you have a different suggestion as to how to make sure everybody knows which count goes with which activity, we're open to it." Defense counsel responded that he "[couldn't] think of a better way to do it." The court asked defense counsel to "[t]hink about it * * * and if you come up with a better idea, let me know." Defendant's failure to object or offer any alternative and his counsel's statement that there was no "better way" to make sure everyone knew which count went with which activity invited any error the trial court may have committed. *Cf. Ingram v. Allen,* 273 Or 890, 893, 544 P2d 167 (1975) (a party's acquiescence in jury instructions invites any error in giving them). Error that is invited is not a ground for reversal. *Id.*; *cf. Tenbusch v. Linn County*, 172 Or App 172, 177-78, 18 P3d 419, *rev den*, 332 Or 305 (2001) (a party's request that the court give a jury instruction invites error resulting from the instruction).

Accordingly, we affirm defendant's convictions on all counts.

Affirmed.