Submitted November 15, 2011, affirmed June 27, petition for review denied November 21, 2012 (352 Or 666)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ADRIAN MONTOYA-FRANCO,
*Defendant-Appellant.*

Marion County Circuit Court
08C46609; A143487

282 P3d 939

Peter Gartlan, Chief Defender, and Laura A. Frikert, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

John R. Kroger, Attorney General, Mary H. Williams, Solicitor General, and Douglas F. Zier, Assistant Attorney General, filed the brief for respondent.

Before Sercombe, Presiding Judge, and Brewer, Judge, and Egan, Judge pro tempore.

BREWER, J.

## BREWER, J.

Defendant appeals from a judgment of conviction for murder, attempted aggravated murder, first-degree assault, unlawful use of a weapon, and conspiracy to commit murder. Defendant asserts that the trial court erred in admitting hearsay testimony of two police detectives concerning statements that defendant made to them through police interpreters. He also challenges the trial court's admission of other evidence in the face of a different hearsay objection.[1] We affirm.

Defendant was arrested by police after he was identified as the shooter in a drive-by murder. While in custody, defendant was interviewed on separate occasions by Detectives Remilly and Boyce. Because defendant primarily spoke Spanish and Remilly and Boyce did not speak Spanish, the detectives conducted their interviews with the assistance of two police interpreters. Officer Diaz interpreted for Remilly, and Officer Byers performed that function for Boyce. At trial, the state indicated its intent to offer statements that defendant made during the police interviews. In response, defendant moved *in limine* to exclude the interpreted statements as "double hearsay." Defendant relied on the Supreme Court's decision in *State v. Rodriguez-Castillo*, 345 Or 39, 188 P3d 268 (2008), as requiring exclusion of the interpreters' statements to the detectives, but he conceded that his statements to the interpreters were admissible as statements by a party-opponent. The prosecutor responded that *Rodriguez-Castillo* authorized admission of defendant's statements under the residual hearsay exception set out in OEC 803(28). The trial court ruled as follows:

"Okay. Well, I will take a look at the statute—I mean at the cases, but *assuming that the state lays the proper foundation,* I'm going to allow the testimony as an exception to the hearsay exclusion. I *will allow* you to make the objection, and the objection will be a standing objection so that you

---

[1] We reject the latter assignment of error without discussion, except to note that it is unpreserved. Although defendant initially lodged a hearsay objection to the challenged line of testimony, after the prosecutor laid an additional foundation, defendant failed to further object when the prosecutor proceeded to elicit the identical testimony.

don't have to make it and reiterate it for each witness and for each statement."

(Emphasis added.)

After the trial court made that ruling, the prosecutor called Officer Diaz as a witness. Diaz testified that he was certified through the City of Salem to act as an interpreter for Spanish speakers. He also testified that Spanish was his first language, that he grew up in a household with Spanish-speaking parents, and that he primarily communicated with his parents in Spanish. Diaz testified that, when he assisted Remilly in conducting defendant's interview, he and defendant were able to communicate effectively with each other. Diaz explained that he interpreted "word for word," that he had no communication problems during the interview, and that he translated everything accurately. Remilly then testified about the content of defendant's translated statements during the interview. Defendant did not object to Diaz's or Remily's testimony about defendant's statements on hearsay or other grounds.

After Remilly testified, the prosecutor called Byers as a witness. Byers testified that he was fluent in Spanish; he had lived in Peru between 1979 and 1982 while on a church mission, and he also had taken Spanish classes at college. He further testified that he had spoken Spanish in his police work for the past 20 years, that he frequently had served as a Spanish language interpreter in his employment, that for the past seven years he had owned a local business with partners who only spoke Spanish, and that he had spoken Spanish every day for the past 20 years. Byers testified that he was able to communicate effectively with defendant during the interview with Boyce. Byers understood defendant's words but, at times during the interview, he had difficulty understanding what defendant was saying in relation to Boyce's questions. That difficulty, Byers explained, arose because he was unfamiliar with the underlying facts of the case, and defendant's answers sometimes were not responsive to Boyce's questions. Instead, defendant sometimes would add or change facts during his answers to the questions. When that occurred, Byers would clarify defendant's responses before translating them to Boyce.

After Byers testified, the state called Boyce to testify about defendant's statements to him. Defendant objected to Boyce's testimony on hearsay grounds. In particular, defendant challenged the adequacy of the foundation for Byers' translation of defendant's statements to Boyce. Defense counsel stated, "I do not believe, based upon his testimony and his qualifications, that his translation satisfies the rule as announced" in *Rodriguez-Castillo*. According to defendant, the foundation for Byers's translation was not "sufficiently guaranteed to qualify for an admission under the residual exception to the hearsay rule[.]"

The trial court overruled defendant's objection, explaining:

"I did pay careful attention to the qualification identified by witness Byers for his—both his fluency in Spanish and also his ability to interpret accurately. * * * I find that what the witness testified that he did is consistent with the set of cognitive skills that an interpreter is required to have for purposes of translation. I know there was—there was questioning of him in terms of whether he does exact word for word, but in looking at what the criteria is for the cognitive skills, it says they have to listen to what's said, comprehend it, abstract the entire message from the words and the word order, store the idea, search his memory for conceptual and semantic matches, and reconstruct the message, keeping the same register or level of difficulty as in the source language, and that's essentially what the witness testified that he did; that he conveyed always what the—what the defendant was telling him so that it was consistent with the intent, meaning of the original statement.

"So I don't find grounds to exclude the testimony of the next witness [Detective Boyce]. Certainly you may cross-examine that witness in terms of how he used the interpreter and your objection can be restated. But based on the interpreter's testimony, I don't find the interpretation to have been outside the trustworthiness of the exception provided by subsection 28."

In accordance with the trial court's ruling, Boyce then testified with respect to defendant's translated statements to him. The jury ultimately found defendant guilty of the charged offenses.

On appeal, defendant separately assigns error to Remilly's testimony with respect to the statements that Diaz translated and Boyce's testimony with respect to the statements that Byers translated. The state initially asserts that defendant failed to adequately preserve a hearsay objection to Remilly's testimony. We agree. The trial court's ruling on defendant's motion *in limine* was conditional: if the state laid a proper foundation for the detectives' testimony, the court indicated that it would admit the translated statements under OEC 803(28). However, that ruling required defendant, if dissatisfied with the foundation that was laid, to renew his objection. Because defendant failed to renew his objection to either Diaz's or Remilly's testimony after the state laid a foundation for the translated statements, his assignment of error to Remilly's testimony is unpreserved. *See State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000) (party must provide trial court with explanation of his or her objection that is specific enough to afford court opportunity to analyze any alleged error).

We turn to defendant's assignment of error concerning the admission of Boyce's testimony as to defendant's translated statements. As noted, defendant did adequately preserve his hearsay objection to that testimony. Defendant concedes that, if offered without translation, his statements were admissible under OEC 801(4)(b)(A), which provides that a "party's own statements" are not hearsay. However, defendant urges that the translation of his statements by Byers added a hearsay layer to Boyce's testimony and that Byers's translation lacked sufficient circumstantial guarantees of trustworthiness to qualify for admission under the residual hearsay exception in OEC 803(28).

Hearsay is "a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." OEC 801(3). Hearsay is inadmissible unless if falls within one of the exceptions set out in OEC 801 to 806 or as "otherwise provided by law." OEC 802. An out-of-court translation of a non-English speaker's statements to a third party constitutes hearsay because the interpreter's translation constitutes an assertion of the English meaning of the original statement.

*See Rodriguez-Castillo*, 345 Or at 41. OEC 803(28)(a), the so-called residual exception to the hearsay rule, authorizes the admission of:

> "[a] statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that:
>
> "(A)  The statement is relevant;
>
> "(B)  The statement is more probative on the point for which it is offered than any other evidence that the proponent can procure through reasonable efforts; and
>
> "(C)  The general purposes of the Oregon Evidence Code and the interests of justice will best be served by admission of the statement into evidence."

In *Rodriguez-Castillo*, the victim primarily spoke Spanish, and the detective spoke only English. To facilitate their communication, a bilingual middle school tutor served as an interpreter. 345 Or at 41. During the detective's interview with the victim, the victim told the tutor that the defendant had sexually abused her. *Id.* at 42. The tutor then translated the statements into English and repeated them to the detective, who repeated them to the jury for the truth of the matter asserted. The court observed that the victim's statements that the defendant had abused her would have been admissible under OEC 803(18a)(b) if she had made them to the detective, and if he had been able to testify to them without the tutor's facilitation. *Id.* at 48. However, because the victim told the tutor what happened, and the tutor relayed the victim's statements to the detective, the trial court concluded that the tutor's statements to the detective added a layer of hearsay that was admissible only if the tutor's out-of-court statements qualified for admission under an exception to the rule against hearsay. *Id.* at 49.

On appeal, the state argued for the first time that the detective's statements were admissible under the residual hearsay exception in OEC 803(28). *Id.* at 49-50. However, the court held that, because the state did not rely on the residual hearsay exception in the trial court, the record was inadequate to allow the court to rule on the admissibility of the statements under OEC 803(28). *Id.* at 50. In so holding,

the court quoted from Mueller and Kirkpatrick's *Federal Evidence*:

> " 'Because of the notice requirement, and because it is peculiarly important in the case of the [residual] exception that the judge consider the evidence and apply the exceptions in the first instance, resort to this provision for the first time on appeal as the basis for challenging or supporting rulings below is inappropriate.' "

*Id.* (quoting 5 *Federal Evidence* § 8:140 at 272). The court further concluded that the admission of the detective's testimony was not harmless. *Id.* at 54. Accordingly, the court reversed an earlier decision by this court, *State v. Rodriguez-Castillo*, 210 Or App 479, 151 P3d 931 (2007), which had held that the challenged evidence was admissible under OEC 803(28).

Because the Supreme Court declined to address the merits of the applicability of OEC 803(28) in *Rodriguez-Castillo*, it is useful to consider this court's analysis of the issue in that case as we address the parties' parallel arguments in this case. As pertinent here, the Supreme Court described this court's analysis under OEC 803(28) as follows:

> "The lead opinion assumed that [the tutor's] repetition of the victim's statements to the detective added another layer of hearsay, and it concluded that [the tutor's] statements were not admissible under OEC 803(18a)(b), as the trial court appears to have ruled. *Rodriguez-Castillo*, 210 Or App at 489. However, a majority of the court concluded that [the tutor's] statements were admissible under the residual exception to the hearsay rule, OEC 803(28)—an exception that neither the state had argued before the trial court nor that the trial court had considered. *See id.* at 496 (lead opinion) (upholding the trial court's evidentiary ruling on that ground); *id.* at 513, (Edmonds, J., concurring). We allowed defendant's petition for review to consider the evidentiary issue that divided the Court of Appeals.
>
> "* * * * *
>
> "The lead opinion concluded that the statements were trustworthy based on evidence that it gleaned from various parts of the trial record. It noted that [the tutor] explained that he spoke Spanish 'quite well,' that [he] works as a

bilingual middle school tutor, and that the victim's trial testimony was consistent with the detective's recitation of her out-of-court, translated statements. [*Rodriguez-Castillo*,] 210 Or App at 494. The dissenting opinions reasoned that the ability to speak a second language is quite different from the ability to serve as an interpreter, that there was no evidence that [the tutor] was a qualified interpreter, nor was there any evidence that he had employed one of two accepted methods of interpretation. *Id.* at 528-30 (Brewer, C. J., dissenting). Rather, as the dissenting opinions reasoned, '[i]t is possible that [the tutor] summarized or paraphrased the victim's statements instead. When asked whether he had accurately translated the conversation, [the tutor] responded only, "I think so. I think it's—yeah, as far as I—as far as I know." ' *Id.* at 530."

*Rodriguez-Castillo*, 345 Or at 44-45, 50-51. (Footnote omitted.)

Interpreting requires a special set of cognitive skills:

"An interpreter must listen to what is being said, comprehend the message, abstract the entire message from the words and the word order, store the idea, search his or her memory for the conceptual and semantic matches, and reconstruct the message (keeping the same register or level of difficulty as in the source language). While doing this, the interpreter is speaking and listening for the next utterance of the language to process, while monitoring his or her own output."

Cathy Rhodes, *Court Certification*, 1 Access to Justice Journal 1, 2 (Summer 1999). Professional interpreters commonly use one of two interpretative methods: simultaneous or consecutive. In simultaneous interpretation, the speaker does not stop or pause, but continues to talk without interruption. The interpreter therefore conveys a virtually simultaneous interpretation of the words while the speaker is still talking. *See Oregon Judges Criminal Benchbook* 1014 (2005). In consecutive interpretation, the interpreter transfers the questions asked of the non-English-speaking person from English into the person's primary language after each question is asked and, then, interprets the person's response into English after the person responds. *Id.*

In *Rodriguez-Castillo*, there was no evidence of the tutor's competence in performing interpretive functions. 210 Or App at 529 (Brewer, C. J., dissenting). He did not indicate that he had any training or experience in that area, or even that he understood what was expected of him in the role of interpreter. *Id.* The record also did not disclose the method that the tutor used to interpret the victim's statements; in fact, it was possible that he had merely summarized or paraphrased the victim's statements. *Id.* at 530.

Here, in contrast, the state created a markedly superior foundational record for the admission of the translation of defendant's statements. Byers testified that he was a fluent Spanish speaker. He spoke the language every day and had done so for 20 years. He received a pay differential from his employer for his Spanish language skills, and he frequently served as an interpreter. With respect to his translation of defendant's statements to Boyce, the difficulties that Byers experienced were not translational; rather, they were the result of defendant's nonresponsive and sometimes self-contradicting statements. Byers testified that defendant had said that "he understood what [Byers] was saying," that the two were able to "communicate effectively," that Byers "understood everything [defendant] said," and that Byers had "relay[ed] exactly the meaning of what defendant [was] saying to Detective Boyce." Because of word arrangement differences between Spanish and English, Byers did not perform a word-for-word translation of defendant's statements. However, he clarified and repeated questions and answers when speaking to defendant so that, in translation, he made sure that the "actual meaning" of defendant's statements was communicated to Boyce.

We conclude that the proffered foundation satisfied the requirements of OEC 803(28).[2] Defendant's own statements regarding his connection with the murder and the events precipitating it were highly relevant, and his own words—if translated accurately—were more probative than

_____

[2] We reject without discussion defendant's unpreserved contention that the evidence did not qualify for admission under OEC 803(28) on the ground that the translated statements *may have been* "covered by" another hearsay exception, OEC 801(4)(b)(D), as an agent's statement.

any other evidence that reasonably could be obtained. The foregoing evidence demonstrates that Byers was fluent in Spanish and that he frequently acted as an interpreter. The evidence also established that, in this case, Byers utilized a consecutive translation method in which he listened to what defendant said, understood the meaning of his statements, discerned the entire meaning from the words and the word order, absorbed it, searched his memory for the conceptual and semantic matches, and reconstructed the message with the same meaning as in the source language, without additions or omissions. It follows that the reliability and trustworthiness of Byers's translation of defendant's statements served the general purposes of the Oregon Evidence Code in that admission of the translated statements was not qualitatively different from admission of defendant's own direct statements. Accordingly, the trial court did not err in admitting the challenged translation of defendant's statements.

Affirmed.