Argued and submitted February 9, 2016, reversed and remanded May 17, petition for review denied October 5, 2017 (362 Or 39)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MAURICIO AMBRIZ-ARGUELLO,
*Defendant-Appellant.*

Washington County Circuit Court
C122756CR; A156699

397 P3d 547

Neil F. Byl, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Susan G. Howe, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Paul L. Smith, Deputy Solicitor General.

Before Sercombe, Presiding Judge, and Tookey, Judge, and DeHoog, Judge.

**TOOKEY, J.**

Defendant appeals a judgment of conviction for three counts of first-degree rape, ORS 163.375; one count of first-degree sodomy, ORS 163.405; one count of second-degree sodomy, ORS 163.395; and four counts of first-degree sexual abuse, ORS 163.427. Defendant raises two assignments of error. In his first assignment of error, defendant argues that the trial court erred by admitting into evidence an interpreter's out-of-court statements translating defendant's statements in Spanish into English. In his second assignment of error, defendant argues that the trial court erred by denying his motion to suppress evidence; we reject that assignment without discussion. For the reasons that follow, we reverse and remand based on defendant's first assignment of error.

Defendant was arrested after his stepdaughter, A, reported that defendant had been sexually abusing her for several years. During a recorded interview with a detective at a police station, defendant was offered and accepted the aid of a police interpreter. Throughout the interview, defendant spoke in Spanish, and the police interpreter translated his statements to the detective in English. In the interview, defendant stated that, when A was nine years old, she took defendant's hand and put it on her vaginal area, and that A did the same thing three other times "two years ago," when A was twelve. Defendant stated that he had confessed to his church pastor and acknowledged that he may have hurt A mentally.

Prior to trial, defense counsel raised a hearsay objection to all out-of-court translations of defendant's statements by the police interpreter. Defense counsel argued that, while defendant's statements in Spanish qualify as statements of a party opponent, the interpreter's English translations of his statements added an additional layer of hearsay that must qualify under a valid exception in order to be admissible. The prosecutor responded that the interpreter's translated statements were not hearsay. The prosecutor contended that, because the interpreter was merely "translating from one language into another," the interpreter's statements were the mirror image of defendant's statements translated "in a

way that the jury can understand it." The prosecutor argued in the alternative that, should the trial court find that the interpreter's translations were a separate hearsay statement, then the translations would be admissible under the residual exception to the hearsay rule. *See* OEC 803(28)(a). In response, defense counsel argued that the residual hearsay exception was not applicable because the state failed to comply with the residual rule's notice requirement. In concluding that the interpreter's English translations of defendant's statements in Spanish were admissible, the trial court stated:

"I think if we dealt with the—the notice issue, we could—we could get it in through the [detective's testimony] under the residual, but I definitely think that it comes in through the interpreter.

"I don't think it makes the interpreter the declarant by virtue of the fact that the interpreter, assuming that they can then establish the record of their ability to understand Spanish, then by virtue of their knowledge of the words in English that equal the words that the defendant was saying in Spanish becomes a declarant.

"The defendant is the declarant. And because the defendant is the defendant and the party opponent, words can be offered against him. And so that would not be hearsay because of that analysis, so [the interpreter's translations] would be admissible."

At trial, A testified and recanted her previous allegations that defendant had sexually abused her. The detective who initially interviewed A also testified regarding his interview of A at her school, where A reported that defendant had been sexually abusing her. A told the detective that, when she was 12, she told her mother about the abuse, but that her mother and her godparents convinced A that it "was just a dream [and] that it didn't really happen."

Before admitting evidence of defendant's statements made during the police interview, the state called the interpreter to testify regarding her qualifications as an interpreter. The interpreter testified that she started learning Spanish at the age of seven, and that she studied Spanish throughout grade school, high school, and college. The

interpreter also testified that she studied abroad at a university in Mexico and was certified by the City of Beaverton as a Spanish interpreter. The interpreter further testified that, in the nine years since becoming certified with the City of Beaverton Police Department, she has interpreted "hundreds" of times and is 98 percent fluent in Spanish. The interpreter testified that she reviewed the audio-video recording and transcript of the interview with defendant in which she had acted as translator and confirmed the accuracy of her translation. Over defendant's hearsay objection, the trial court admitted the audio-video recording and transcript of defendant's interview at the police station. As noted, the jury found defendant guilty of three counts of first-degree rape, one count of first-degree sodomy, one count of second-degree sodomy, and four counts of first-degree sexual abuse.

In his first assignment of error, defendant argues that the trial court erred in admitting the audio-video recording and transcript containing the interpreter's English translations of defendant's statements (the interpreter's English translations), because those translations amounted to inadmissible hearsay. Defendant concedes that, if offered without translation, his statements in Spanish were admissible under OEC 801(4)(b)(A), which provides that a "party's own statements" offered against that party are not hearsay. However, defendant contends that the interpreter's English translations of his statements added an additional layer of hearsay, and that those statements were not admissible under any exception to the rule against hearsay. In response, the state contends, for the first time, that the trial court did not err because the interpreter was acting as either defendant's representative or agent and, thus, the interpreter's English translations were admissible nonhearsay.

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." OEC 801(3). As previously noted, the state argued at trial that the interpreter's English translations of defendant's statements in Spanish were not hearsay, and the trial court agreed, ruling that the interpreter's English translations

were admissible because defendant—not the interpreter—remained the declarant. That ruling cannot be reconciled with *State v. Montoya-Franco*, 250 Or App 665, 669, 282 P3d 939, *rev den*, 352 Or 666 (2012), in which we held that an "out-of-court translation of a non-English speaker's statements to a third party constitutes hearsay because the interpreter's translation constitutes an assertion of the English meaning of the original translation." *See also State v. Rodriguez-Castillo*, 345 Or 39, 46, 188 P3d 268 (2008) (holding that a translated statement constituted double hearsay and, as a result, was admissible only if the state could show that the translations "either came within an exception to the hearsay rule or did not constitute hearsay").

On appeal, the state does not defend the trial court's ruling that the interpreter's English translations were admissible under OEC 801(4)(b)(A), which provides that a party's own statement offered against that party is not hearsay. Rather, the state's only argument on appeal is that we should affirm the admission of the interpreter's English translations pursuant to OEC 801(4)(b)(C) and (D), which provide that a statement is not hearsay if the statement is offered against a party and is made by "the party's agent," or if the statement is made "by a person authorized by the party to make a statement concerning the subject." However, because the state did not argue either of those theories below, we are not in a position to conclude that the interpreter's English translations were admissible on the basis of OEC 801(4)(b)(C) or (D). *See Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001) (appellate courts may not rely on an alternate ground for upholding a trial court's ruling when the record either is not adequate or would have been developed differently if the alternate ground had been raised at trial).[1] Accordingly, the

---

[1] The dissent contends that the interpreter's English translations were not hearsay because they were not offered to prove the truth of the matter asserted but only "to show what was said." 285 Or App at 591 (Sercombe, P. J., dissenting). We disagree that the statements were not offered to prove the truth of the matter asserted. The interpreter's English translations *were* being offered to prove the truth of the matter asserted; that is, the English translations were offered for the purpose of providing the jury with a truthful English equivalent of defendant's confession in Spanish so that, in turn, it could be used as substantive evidence of defendant's guilt. Likewise, the English translations introduced via the audio-video recording and transcript were not offered to "'illustrate and supplement'

state's newly raised theories of admissibility—the sole argument that it makes in support of the interpreter's English translations having been admitted into evidence—cannot provide a basis for affirming the trial court's ruling.

We next consider whether erroneously admitting the interpreter's English translations was harmless.

"Evidentiary error is not presumed prejudicial, and the burden is on a defendant who appeals his conviction to show that a court's error affected a substantial right. An evidentiary error affects a defendant's substantial rights when, based on the totality of the record, the error affected the jury's verdict. If there is little likelihood that the error affected the jury's verdict, then the evidentiary error was harmless."

*State v. Kayfes*, 213 Or App 543, 555, 162 P3d 308, *rev den*, 343 Or 690 (2007) (citations omitted). In determining whether there is little likelihood that the error affected the verdict, "we consider any differences between the quality of the erroneously admitted evidence and other evidence admitted on the same issue to assess whether the jury would have found the evidence to be duplicative, cumulative, or unhelpful in its deliberations." *State v. Chandler*, 278 Or App 537, 541, 377 P3d 605, *rev den*, 360 Or 568 (2016) (internal quotation marks omitted). "If the erroneously admitted evidence relates to a central factual issue in the case, rather than to a tangential issue, that evidence is more likely to have affected the jury's determination." *State v. Marquez-Vela*, 266 Or App 738, 746, 338 P3d 813 (2014) (citation omitted).

In this instance, we cannot conclude that the error was harmless. Here, the trial court improperly admitted the audio-video recording and transcript of defendant's interview at the police station where defendant admitted to touching A, and both the recording and the transcript contained the interpreter's English translations. Other than the audio-video recording and the transcript containing defendant's admission, there was no qualitatively

---

the interpreter's in-court testimony." 285 Or App at 591 (Sercombe, P. J., dissenting). The interpreter's in-court testimony, absent the audio-video recording and transcript containing the English translations, would provide no independent basis for demonstrating defendant's admissions.

similar evidence concerning defendant's admission. Indeed, absent the improperly admitted hearsay, the jury would not have heard an English-language recount of defendant's admission that he had touched A. Moreover, defendant's admission—as translated via the inadmissible hearsay— was central to the state's theory of the case. Defendant's admission was a prominent part of the state's case in closing argument.[2] In one instance, the prosecutor stated, "When you're hearing [A] say nothing happened, remember that even [defendant] admits something happened. People don't admit to molesting children just willy nilly." Hence, the state utilized defendant's admission to counter the fact that, at the trial, the victim recanted her previous allegations.[3] Under the circumstances, we cannot conclude that there is little likelihood that the erroneous admission of the interpreter's English translations affected the verdict.

Reversed and remanded.

**SERCOMBE, P. J.,** dissenting.

I respectfully dissent. I agree that the interpreter's assertions of the English meaning of defendant's Spanish statements in the videotape and transcript, when offered to prove the correctness of her translation, are hearsay. As

---

[2] During closing argument, the prosecutor's remarks referring to defendant's admission included:

"[T]he defendant himself admitted that he touched [A] on her vagina, over the pajamas, once when she was nine and three more times when she was twelve.

"* * * * *

"[Defendant] confessed to touching her on her vagina. Who does that? Who confess—Who touches a nine-year old girl on her vagina? Who does that? I'll tell you who does it, that guy. The defendant.

"* * * * *

"He has admitted that he touched her on her vagina when she [was] nine and he's admitted that he touched her on her vagina when she [was] twelve, he blames her for it, she took his hand and made him do it, but he felt so bad about it he talked to a priest and the understatement of the trial, understatement of the year, I may have also hurt her mentally, is what [defendant] says."

[3] In arguing why the jury should believe A's previous allegations, and not her recantation at trial, the prosecutor stated, "Reason number one is what I just told you, [defendant's] confession," and, "If [A] really made this up, why did defendant confess to sexually abusing her?"

noted by the majority, under *State v. Montoya-Franco*, 250 Or App 665, 669, 282 P3d 839, *rev den*, 352 Or 666 (2012), "[a]n out-of-court translation of a non-English speaker's statements to a third party constitutes hearsay because the interpreter's translation constitutes an assertion of the English meaning of the original statement."

I disagree, however, that when the translations in the videotape and transcript were offered into evidence, they were offered for the truth of the translations. Instead, the truth of the translation was established by the in-court testimony of the interpreter, so that when the videotape and transcript were offered into evidence, the translation was offered to show what was said, and the translated statements by defendant were nonhearsay admissions. *See* OEC 801(3) (defining "hearsay" as "a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted"). Put another way, the out-of-court statements of the interpreter are only hearsay to the extent that they are an implicit declaration of the correctness of the translation. To the extent other evidence establishes the correctness of the translation, the out-of-court statements no longer implicitly declare that correctness and are admissible to show what translation was made.

That appears to be the view of the trial court in explaining the pretrial ruling under review. As noted by the majority, the court explained that, when the translation is established "through the interpreter," the defendant becomes the declarant of the truth of the translated statements:

"I think if we dealt with the—the notice issue, we could—we could get [the translation] in through the [detective's testimony] under the residual [exception to the hearsay rule], but *[the translation] definitely * * * comes in through the interpreter.*

"I don't think it makes the interpreter the declarant [of the out-of-court translation] by virtue of the fact that the interpreter, assuming that they can then establish the record of their ability to understand Spanish, then by virtue of their knowledge of the words in English that equal the words that the defendant was saying in Spanish becomes a declarant.

"The defendant is the declarant [of the truth of his out-of-court translated statements]. And because the defendant is the defendant and the party opponent, words can be offered against him. And so that would not be hearsay because of that analysis, so [the interpreter's translations] would be admissible."

(Emphasis added.)

That course of establishing the truth of the translation "through the interpreter" was followed. Prior to the introduction of the videotape and transcript, the interpreter testified about her qualifications, certification, and competency as an interpreter, the accuracy of her translations in general, and her presence at defendant's interview. She was then asked:

"Q. [PROSECUTOR]: And have you had a chance since then to review the video and audio recording and also review a written transcript of your interpretation in that conversation?

"A: Yes, I have.

"[PROSECUTOR]: During that conversation with [defendant], did you interpret everything that Detective Kirlin said in English into Spanish for [defendant]?

"A: Yes, I did.

"[PROSECUTOR]: And then did you interpret everything that [defendant] said in Spanish back into English for Detective Kirlin?

"A: Yes, I did.

"* * * * *

"[PROSECUTOR]: Have you had a chance since that time to review the written transcript of that interview or a portion of that interview?

"A: Yes, I did.

"[PROSECUTOR]: And have you had a chance since that time to review the video and audio recording of that interview?

"A: Yes, I have.

"[PROSECUTOR]: The written transcript and the video and audio recording, *are they true and accurate*

*representations of what happened during that interview* between Detective Kirlin and [defendant]?

"A: Yes.

"[PROSECUTOR]: Your Honor, at this time, I offer State's 1 and 2 [the videotape and transcript].

"[DEFENSE COUNSEL]: Judge, I'm going to make my previously articulated objection to the—to the hearsay statements of [the interpreter] on Exhibits 1 and 2. * * *

"* * * * *

"[COURT]: I'm overruling [the objection], which means the statements are going to be admissible as statements of the defendant even though they were coming through an interpreter."

(Emphasis added.) On redirect examination, the interpreter agreed that she double-checked the transcript "to make sure that everything *you're telling the jury* is 100 percent accurate." (Emphasis added.)

After the interpreter testified in court that the translation shown in the exhibits was "true and accurate," the translated statements in the exhibits became admissible to show that they were said (for nonhearsay purposes), rather than for the correctness of the statements (as hearsay), *i.e.*, that the exhibits were, in the words of the prosecutor, "true and accurate representations of what happened during that interview." That is the course that the prosecutor took in this case—to prove the accuracy of the translation by direct testimony and to introduce the translation in order to prove what was said. After the reception of the exhibits into evidence, the prosecutor confirmed with the interpreter that "everything you're telling the jury is 100 percent accurate," explicitly referring to the truthfulness of the interpreter's in-court testimony to "the jury," rather than the truthfulness of her out-of-court statements to defendant and Detective Kirlin.

The classification of the translation in the videotape and transcript as "nonhearsay" is consistent with *Arnold v. Burlington Northern Railroad*, 89 Or App 245, 748 P2d 174, *rev den*, 305 Or 576 (1988). In *Arnold*, the defendant employer appealed a judgment awarding damages to the

plaintiff employee, whose legs were amputated in a work incident. As we noted:

> "Finally, defendant assigns as error that the court, over defendant's objection, admitted in evidence a video-tape that showed plaintiff doing supposedly representative daily activities. It was not a film of an actual day in plaintiff's life. It was 27 minutes long and was shown in three segments without a sound track. In it, plaintiff put on his prosthetic legs, drove his specially equipped truck, fell, grimaced with pain and crossed a street while the pedestrian light changed. Between each segment, plaintiff testified to what had been shown in the film and to the frequency of the occurrences. Defendant contends that the film is non-verbal hearsay, selective, self-serving and cumulative and that its prejudicial impact outweighed its probative value. OEC 403.

> "It is not hearsay. It is demonstrative evidence that plaintiff offered to illustrate and supplement his testimony. He testified to its accuracy, and he was subject to cross-examination."

89 Or App at 248.

So too, here. The translation portions of the video-tape and transcript were offered not as hearsay, but to "illustrate and supplement" the interpreter's in-court testimony about those translations. Because the translation evidence was admissible as a nonhearsay statement, the court did not err in overruling the hearsay objection.

I also disagree with the majority's conclusion that any error in admitting the out-of-court translations was prejudicial because, "absent the improperly admitted hearsay, the jury would not have heard an English-language recount of defendant's admission that he touched A" and that admission was "central to the state's theory of the case." 285 Or App at 590. The jury did hear evidence of the truthfulness of the translation (the purported erroneously admitted hearsay) in direct testimony by the interpreter and that evidence would have allowed the jury to hear the translated statements.

As noted by the majority, in assessing prejudicial error, we initially "'consider any differences between the

quality of the erroneously admitted evidence and other evidence admitted on the same issue to assess whether the jury would have found the evidence to be duplicative, cumulative, or unhelpful in its deliberations.' *State v. Chandler*, 278 Or App 537, 541, 377 P3d 605, *rev den*, 360 Or 568 (2016)." 285 Or App at 589. *See also State v. Sewell*, 222 Or App 423, 428-29, 193 P3d 1046 (2008), *adh'd to on recons*, 225 Or App 296, 201 P3d 918, *rev den*, 346 Or 258 (2009) (after first identifying the "particular evidentiary issue that is subject to harmless error analysis," the "court considers the nature of the erroneously admitted evidence in the context of other evidence on the same issue"). Here, if the admission of the out-of-court declaration of the truthfulness of the translation was error, that error was harmless because the evidence was duplicative of the interpreter's in-court testimony that the translation was correct.

In sum, the record of the interview was not offered to prove the correctness of the translation. That had been proved by the testimony of the interpreter immediately before the offer into evidence of that record. Instead, the record was offered to prove the substance of defendant's admissions and defendant's translated statements in that regard ("representations of what happened") and the evidence was not hearsay under OEC 801(4)(b)(A) ("A statement is not hearsay if: (b) [t]he statement is offered against a party and is: (A) [t]hat party's own statement[.]"). Analogously, any erroneous admission of the interpreter's implicit declaration of the correctness of the translation was not harmful, since an explicit declaration of that same evidence was admitted without objection at trial. I would also deny defendant's second assignment of error relating to the voluntariness of defendant's confession. Accordingly, I would affirm the judgment of conviction. I dissent from the majority's disposition to the contrary.