LAGESEN, P. J.
*171 A jury found that defendant committed several acts of violence against his mother, with whom he lived, and convicted defendant of four offenses for those acts. On appeal, defendant assigns error to the admission of evidence that, while he was incarcerated pending trial, he directed another inmate to contact his mother regarding her testimony. He contends that the evidence was hearsay and should have been excluded for that reason. We agree and, because we conclude that the erroneous admission of the evidence was not harmless, we reverse and remand.
The pertinent facts are not disputed. Defendant was charged with two counts of felony strangulation (Counts 1 and 3), ORS 163.187 ; one count of felony fourth-degree assault (Count 2), ORS 163.160 ; and one count of menacing (Count 4), ORS 163.190, after defendant's mother, M, told police that defendant had hit her in the head twice, tried to strangle her twice, and threatened to kill her.[1] But, before trial, M retreated from her initial version of events, indicating in an interview with a defense investigator that her initial statements were not accurate and giving a version of events that called into question defendant's culpability on the charges against him. M's trial testimony was fairly vague, in contrast with her statements during the initial investigation and the defense investigation. Consequently, at trial, the key dispute centered on which one of M's versions of events should be believed: her initial statements to police, or her later statements to the defense investigator.
To encourage the jury to credit M's initial description of the incident over her later description, the state sought to prove that M's change in story was attributable to defendant's conduct. To that end, the state sought to introduce evidence that defendant had directed another inmate with whom he was incarcerated to contact M regarding her testimony; M herself testified about the phone call, explaining that somebody called her and asked her what she was going to do, but she did not attribute the call to defendant. The *172 call had been recorded, and the state's proposed evidence that defendant was behind the call initially took the form of a recorded out-of-court statement by the other inmate to M that he was telling her what defendant "wants me to tell you." The state argued that "the purpose of [introducing the *1199 evidence was] to show that there was contact made by the defendant with [M]."
Defendant objected on hearsay grounds, noting that the evidence on which the state was relying to prove the truth of the fact that defendant was behind the phone call to M was the other inmate's out-of-court statement indicating that he was relaying information on behalf of defendant, contrary to OEC 802 's general prohibition on the admissibility of hearsay.[2] Defendant also objected under OEC 403.
In response to defendant's hearsay objection, the state adjusted its strategy for convincing the trial court to admit the evidence. It explained that, rather than introducing the recording of the other inmate's out-of-court statement or other direct evidence of that statement, it would call a witness to testify to "whether there was contact made at the direction of [defendant] via a phone call and leave it at that." Defendant reiterated his objection, arguing that the state's proposal did not get around the hearsay problem: "Your Honor, I don't think you could separate the fact of content from the intent that the state is trying to infer by that content, which constitutes hearsay." The trial court overruled the objection.
The state then called Creech, a mental health provider employed by the jail where defendant was detained pretrial. The state asked Creech if she had "receive[d] information that the defendant *** had directed contact with [M]?" Creech responded, "yes." The state then asked, "was that via recorded phone call?" Creech again responded, "yes."
In closing, the state urged the jury to credit M's initial account of the incident, arguing that M had changed her *173 description of the incident as a result of defendant's influence on her. The state emphasized that, following his arrest, defendant contacted M even though a no contact order was in place, including through "a phone call, trying to get [M] not to come in here" to court. The state argued further that M "had every right to be in fear of [defendant] on [the date of the incident]. He's continued to try and influence her. He doesn't want to be held accountable." The state reiterated that theme in its rebuttal argument: "The evidence is defendant contacted her, had other people contact her on his behalf."
The jury found defendant guilty of the lesser-included offense of attempted strangulation on Count 1, and guilty as charged on the other three counts. The trial court sentenced defendant to a sum of 48 months' incarceration.
On appeal, defendant contends that the trial court erred when it determined that the evidence that defendant directed the phone call to M was not hearsay. Our review is for legal error. State v. Hartley , 289 Or. App. 25, 29, 407 P.3d 902 (2017).
As an initial matter, defendant acknowledges that the other inmate's out-of-court statement was not, in fact, admitted at trial. Defendant asserts that the state's workaround for the hearsay problem-calling Creech to testify that she had received "information" obtained "via a recorded phone call" and that defendant directed the call-does not solve the hearsay problem because the "information" in question consisted of the other inmate's recorded out-of-court statement on which the state relied for its truth. In response, the state does not dispute that the inmate's out-of-court statement regarding defendant's role in the phone call would be inadmissible hearsay if admitted for the truth of the matter. The state also does not contend that its workaround solved the hearsay problem if the evidence was admitted for the truth of the fact that defendant directed the phone call. Instead, the state contends that the evidence was not admitted for its truth but, instead, was properly admitted to show its effect on the listener, M. In other words, as we under-stand the state's argument, the state contends that the evidence was offered to prove that M thought that defendant *174 directed the contact with her, *1200 not to prove that defendant actually directed the contact with her.
If the state were correct that the evidence about the inmate's statement that defendant was behind the call was admitted for the purpose of demonstrating its effect on M, the listener, then there would be no error in admitting it. State v. Schiller-Munneman , 359 Or. 808, 817, 377 P.3d 554 (2016) (evidence of out-of-court statements was not hearsay when admitted to show the effect on the listener, rather than for the truth of its content). But the state's articulated basis for admitting the evidence below was different. The state quite clearly explained its purpose for introducing the evidence: "The purpose of [introducing the evidence was] to show that there was contact made by the defendant with [M]." There is no indication that the trial court admitted the evidence for any other purpose. Consistent with its stated purpose for introducing the evidence, the state urged the jury to infer, based on the evidence, that defendant had directed contact with the victim, that defendant had influenced her, causing her to change her statements about the incident because of that influence; the trial court did not intervene or indicate that the state's employment of the evidence was impermissible under its ruling. Those circumstances demonstrate that the evidence was admitted for the truth of the fact that defendant directed the phone call with M. Consequently, the court erred when it overruled defendant's hearsay objection to the evidence.
The remaining question is whether the error provides grounds for reversal or is, instead, harmless. Evidentiary error is harmless only when there is "little likelihood that the error affected the verdict." State v. Ambriz-Arguello , 285 Or. App. 583, 589, 397 P.3d 547, rev. den. , 362 Or. 39, 403 P.3d 784 (2017). In assessing the likelihood that erroneously admitted evidence affected a verdict, "we consider any differences between the quality of the erroneously admitted evidence and other evidence admitted on the same issue to assess whether the jury would have found the evidence to be duplicative, cumulative, or unhelpful in its deliberations." State v. Chandler , 278 Or. App. 537, 541, 377 P.3d 605, rev. den. , 360 Or. 568, 385 P.3d 82 (2016) (internal quotations marks omitted). We also consider the extent *175 to which the evidence related to a central factual issue; "[e]rroneously admitted evidence is less likely to be harmless if it pertains to the heart of the state's factual theory of the case." State v. Cook , 264 Or. App 453, 457, 332 P.3d 365 (2014) (internal quotation marks omitted).
Applying those standards here, we conclude that the error was not harmless. As the case was tried, the central issue was which of M's statements about the incident should be credited: her initial statements or her statements to the defense investigator. If M's later description of events were to be credited, there would be little likelihood that the jury would find defendant guilty as charged. In those statements, M denied that defendant constrained her breathing, denied that he had hurt her in any significant way, and denied that he had threatened to kill her. The evidence that defendant had contacted M was central to the state's theory that M had changed her statements from an initial, accurate version of events to an inaccurate one because of defendant's influence. Although there was other evidence of contact between defendant and M in the form of letters, no evidence was presented regarding the content of those letters. By contrast, by the time the state introduced the evidence that defendant had directed the phone call, M had testified that the call related to her testimony. That evidence, when considered in connection with erroneously admitted evidence that defendant was behind the phone call, was the most direct evidence that defendant had attempted to influence his mother's testimony; without the evidence that defendant had directed the phone call, the state had only circumstantial evidence that defendant was attempting to influence M's testimony. Additionally, the fact that the evidence was introduced through Creech-a third party to the dispute likely to be perceived by the jury as neutral-increases the likelihood that the jury credited the evidence. For those reasons, we conclude that the error was not harmless.
Reversed and remanded.

Defendant was also charged with one count of identity theft, ORS 165.800. The jury acquitted defendant on that charge and it is otherwise immaterial to the issues before us.

" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." OEC 801. Under OEC 802, "[h]earsay is not admissible except as provided in [OEC 801 ] to [OEC 806 ] or as otherwise provided by law."