774 December 11, 2024 No. 896

***This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Kaelen PARK,
an individual,
*Plaintiff-Respondent,*

*v.*

Daniel BURNETT, D.C.,
an individual,
and Boones Ferry Chiropractic and Massage, P.C.,
an Oregon professional corporation,
*Defendants-Appellants.*

Clackamas County Circuit Court
18CV11836; A179304 (Control), A179305

Ulanda L. Watkins, Judge.

Argued and submitted July 24, 2024.

C. Robert Steringer argued the cause for appellants. Also on the briefs were Adina Matasaru, Erica Tatoian, and Harrang Long P. C.

Samuel T. Smith argued the cause for respondent. Also on the brief was Smith Foster King LLP.

Before Aoyagi, Presiding Judge, Egan, Judge, and Joyce, Judge.*

AOYAGI, P. J.

Affirmed.

_____

* Egan, J., *vice* Jacquot, J.

**AOYAGI, P. J.**

In this medical malpractice case, defendants Daniel Burnett, D.C., and Boones Ferry Chiropractic and Massage, P.C., appeal a judgment for plaintiff after a three-week jury trial. In their first assignment of error, they challenge the denial of their motions for directed verdict. In their second assignment of error, they challenge the admission of Exhibit 112—materials provided to students at the University of Western States, formerly known as Western States Chiropractic College (Western States)—under OEC 803(6), the business records exception to the hearsay rule. We affirm.

## DENIAL OF DIRECTED VERDICT

Plaintiff, then aged 28, suffered arterial dissection and several strokes close in time to receiving chiropractic treatment from Dr. Burnett. At trial, the parties' experts disagreed as to when the dissection and resulting strokes occurred and what caused them. Given how the trial unfolded, we understand plaintiff's main theory to have been that, on August 26, 2016, immediately after a chiropractic adjustment to her neck, plaintiff experienced and communicated to Burnett symptoms that he should have identified, but failed to identify, as dissection or stroke symptoms—blinding head pain and trouble getting up from the table and walking—and that plaintiff was harmed by Burnett's failure to obtain medical treatment for her at that time and, to a lesser degree, by the three additional neck adjustments that Burnett performed over the next four days.

Defendants contend that the trial court erred in denying a directed verdict, because the evidence at trial was legally insufficient to prove the elements of negligence, *i.e.*, standard of care, breach of the standard of care, causation of injury, and damages.

On review of the denial of a directed verdict, we view "the facts in the light most favorable to plaintiff, drawing every reasonable inference from the evidence in her favor." *Trees v. Ordonez*, 354 Or 197, 200, 311 P3d 848 (2013). The legal question is "whether there was any evidence in

the record to support [each challenged] element of plaintiff's claim." *Id.* at 205.

Regarding the first element of negligence, defendants argue that plaintiff failed to present necessary expert testimony on the standard of care. We agree that expert testimony was necessary to establish the standard of care, that is, what "a reasonably prudent, careful and skillful practitioner of [chiropractic medicine] in the community or a similar community under the same or similar circumstances" would do. *Creasey v. Hogan*, 292 Or 154, 163, 637 P2d 114 (1981); *see Getchell v. Mansfield*, 260 Or 174, 179, 489 P2d 953 (1971) (explaining that what is reasonable for a professional is not ordinarily within the knowledge of the jury). However, plaintiff presented such evidence.

Dr. Burland, a chiropractor, testified to what she learned about dissection and strokes in her training at Western States and how she conducted her own practice. Of particular relevance, she testified that, in accordance with her training at Western States, if a patient had "a really bad headache" that came on immediately after an adjustment, she might not call 9-1-1 right away, but if "they also had trouble walking or needed help getting up," she would call 9-1-1. Burland's testimony, including but not limited to that quoted, provided adequate evidence to establish the standard of care. *See Creasey*, 292 Or at 166 (what qualifies a medical expert witness to testify regarding the standard of care "is not *** the witness's familiarity with the legal standard—for the witness may not know (and need not know) what is the legal standard—but *** the witness's knowledge of what constitutes proper medical treatment").

In arguing otherwise, defendant raises an unpreserved issue regarding whether the Western States materials to which Burland referred represent the standard of care for Oregon chiropractors. That issue is not properly before us, but, even if it were, we would find that argument unpersuasive. Although defendants contend otherwise, Burland testified that the materials at issue were provided to every Western States student. Moreover, every chiropractor involved in this litigation, including defendants' expert (a former faculty member at Western States), was trained at

Western States. On this record, the jury could fairly infer that the Western States training materials establish what a reasonably prudent, careful, and skillful Oregon chiropractor would do if a patient showed the symptoms that plaintiff testified she suffered on August 26.

Regarding the second element of negligence, defendants argue that neither Burland nor any other witness opined that Burnett breached the standard of care. Although that is true, we disagree that it follows that plaintiff failed to prove breach of the standard of care. As already discussed, Burland's testimony established that the standard of care required a chiropractor to seek emergency treatment if, immediately after an adjustment, the patient began to have a really bad headache and trouble getting up or walking. Those were the symptoms that plaintiff testified to having communicated to Burnett immediately after the adjustment on August 26. It was undisputed that Burnett did not seek emergency treatment or inform plaintiff of any dissection- or stroke-related concern on August 26, or for several days afterward, during which he performed three more neck adjustments on plaintiff. That evidence allowed the jury to find a breach of the standard of care. *See Trees*, 354 Or at 215 (the question is whether, from the evidence presented about the standard of care and the evidence of what the defendant did, "a reasonable jury could conclude that [the] defendant breached the standard of care"). To the extent that there might be cases in which the issues are so complex as to make it necessary for an expert to directly opine on whether the defendant breached the standard of care, this is not one of them.

Regarding the third and fourth elements of negligence, defendants argue that plaintiff failed to prove her staying in Burnett's office for 30 to 45 minutes after the onset of additional stroke symptoms on September 1 caused her any damages. It is true that plaintiff's neurologist testified that that delay did not cause any damages. However, that is immaterial, because the theory on which the case went to the jury was that plaintiff suffered damages due to Burnett's failure to recognize her symptoms on August 26.

The trial court did not err in denying directed verdict.

## ADMISSION OF EXHIBIT 112

Defendants argue that the trial court erred in admitting Exhibit 112, the materials from Western States that Burland relied on in her testimony.

We begin with the relevant procedural history. When defendant made a hearsay objection to Exhibit 112, plaintiff responded by citing, among other things, the business records exception. Defendants countered that "we do not have anyone confirming this is a business record. Western States would have to have a representative to confirm that this is a business record." The court rejected that categorical position, stating, "Not necessarily, but I do agree that for it to be a business record it has to be established." The court told plaintiff to lay the foundation for admission as a business record, and plaintiff proceeded to question Burland about the exhibit. Plaintiff then offered the exhibit again. The court ruled, "[Exhibit] 112 comes in over all of the objections that I have heard so far." Defendant did not raise any other objection.

As that procedural history demonstrates, defendants preserved the argument that Burland was categorically unable to lay the necessary foundation because she was not a "representative" of Western States. To the extent that they renew that argument on appeal, it is foreclosed by the Supreme Court's explanation in *Arrowood Indemnity Co. v. Fasching*, 369 Or 214, 503 P3d 1233 (2022), that, to put on the necessary evidence regarding the record-making practices of the business that created the record, the proponent may *either* "call a witness from the business that created the record" *or* "call another witness who can testify about the practices of the business that created the record." 369 Or at 239-40. Under *Arrowood*, the question is not, as defendants argued, whether Burland was a "representative" of Western States; rather, it is whether she had the necessary knowledge about Western States' record-making and recordkeeping practices. The court did not err in rejecting defendants' categorical argument that Burland, who had been a student and teacher's aide at Western States, could not testify to the foundation for Exhibit 112.

After the court rejected defendants' categorical argument, it explained that plaintiff did nevertheless have to establish that the exhibit qualified as a business record. Plaintiff questioned Burland further regarding the exhibit and then offered it again. Defendants raised no further objection at that point, and the trial court admitted it "over all of the objections that I have heard so far."

Defendants now contend that the foundation that plaintiff laid failed to establish that the materials qualified as a business record. But defendants did not object to the foundation that plaintiff laid, so that argument is unpreserved for appeal and not properly before us. *See State v. Montoya-Franco*, 250 Or App 665, 666 n 1, 282 P3d 939, *rev den*, 352 Or 666 (2012) (argument challenging sufficiency of foundation was unpreserved where, after an initial hearsay objection, further foundation was laid and the same testimony was elicited again without objection); *State v. Saunders*, 221 Or App 116, 121, 188 P3d 449, *rev den*, 345 Or 416 (2008) (argument challenging sufficiency of foundation was unpreserved where the court ruled pretrial to allow admission if a proper foundation was laid at trial and no objection was made after foundation was laid at trial).

Accordingly, we reject the assignment of error regarding Exhibit 112.

Affirmed.